2008 VT 139

**In re DUNKIN DONUTS S.P. APPROVAL (Montpelier)**

[969 A.2d 683]

No. 07-468

¶ 1. December 23, 2008. Damartin Quadros appeals the Environmental Court's ruling that he must file a motion under Vermont Rule of Civil Procedure 60(b) before the court will consider his

---

proposed addition of a drive-through window to a Dunkin Donuts restaurant and retail store at 47-51 Berlin Street in Montpelier, Vermont. We reverse.

¶ 2. The facts which follow are undisputed. In 2001, Quadros applied to the Montpelier Planning Commission to replace a building at 47-51 Berlin Street with a Dunkin Donuts restaurant and retail store, including a drive-through window. The Planning Commission denied this application because of several potential traffic-related problems. Specifically, the Commission was concerned that the proposed drive-through could not accommodate large vehicles like trucks and RVs, and that the drive-through queue would obstruct on-site parking and back up traffic onto Berlin Street. In 2002, Quadros submitted a revised proposal that did not include a drive-through window. The Commission approved this plan. Cumberland Farms, Inc., owner of an adjoining parcel, appealed the Commission's approval to the Environmental Court.

¶ 3. While the appeal was pending, Quadros and Cumberland Farms entered into a stipulation pursuant to which Cumberland Farms agreed to drop the appeal and Quadros agreed to conform Dunkin Donuts' construction and operation to five stipulated conditions. Only the fifth condition is relevant to this matter. It provided that the Dunkin Donuts "shall not include a drive-up service window or drive-through service." The stipulations were incorporated into a final court order granting approval for the site plan, which was issued on March 19, 2003.

¶ 4. Then, in December 2006, Quadros applied to the Montpelier Development Review Board for an amended site plan to include a drive-through window. The Board approved the 2006 amended plan, and, again, Cumberland Farms appealed the decision to the Environmental Court.

¶ 5. Cumberland Farms moved for summary judgment, arguing that Quadros was bound by his 2003 stipulation, and that the denial of his original 2001 application barred him from reapplying for a drive-through window. The Environmental Court granted the motion, holding that the terms of the 2003 stipulated court order controlled until Quadros moved under Rule 60(b) for relief from those terms.[1] This appeal followed.

¶ 6. We review grants of summary judgment using the same standard as the trial court, and will affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *In re Jolley Assocs.*, 2006 VT 132, ¶ 7, 181 Vt. 190, 915 A.2d 282. The Environmental Court's conclusion that Quadros must seek Rule 60(b) relief from the stipulated judgment is a conclusion of law that we review under a nondeferential de novo standard. *In re Armitage*, 2006 VT 113, ¶ 3, 181 Vt. 241, 917 A.2d 437.

¶ 7. We do not agree that Quadros was required to file a Rule 60(b) motion as a prerequisite for submitting a site plan amendment. In so ruling, the Environmental Court misapplied the doctrine of claim preclusion (res judicata). Ordinarily, Rule 60(b) is the only way to avoid claim preclusion and reopen "[u]nappealed final judgments." *Johnston v. Wilkins*, 2003 VT 56,

[1] Rule 60(b) allows a court to relieve a party from a "final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying release from the operation of the judgment." V.R.C.P. 60(b).

¶ 8, 175 Vt. 567, 830 A.2d 695 (mem.). However, claim preclusion "does not apply to administrative proceedings as an inflexible rule of law." *In re Carrier*, 155 Vt. 152, 157, 582 A.2d 110, 113 (1990). Although the principles of claim preclusion "generally apply in zoning cases as in other areas of the law," *id.* at 158, 582 A.2d at 113, the "successive-application doctrine" is a distinct set of preclusive rules developed specifically for zoning proceedings. *In re Armitage*, 2006 VT 113, ¶ 4.

¶ 8. In *Carrier*, we articulated the successive-application doctrine as follows: a "zoning board or planning commission may not entertain a second application concerning the same property after a previous application has been denied, unless a substantial change of conditions ha[s] occurred or other considerations materially affecting the merits of the request have intervened between the first and second applications." 155 Vt. at 158, 582 A.2d at 113 (citations and quotations omitted). Therefore, "a planning commission (or a court acting as a planning commission) may grant a second application for site plan approval when the application has been substantially changed so as to respond to objections raised in the original application." *Id.* Under this doctrine, an applicant may be relieved from a previous application denial upon a showing that a successive application "addresses all concerns that prevented approval of the prior application." *In re Armitage*, 2006 VT 113, ¶ 4. This standard is different from, and frequently more flexible than, the six narrow exceptions to claim preclusion carved out by Rule 60(b).

¶ 9. The successive-application doctrine is an attempt to balance the competing concerns of flexibility and finality in zoning decisions.[2] On the one hand, zoning decisions must be responsive to changing

circumstances. *Schubach v. Silver*, 336 A.2d 328, 333 (Pa. 1975) (need for flexibility in zoning decisions outweighs need for finality of judgments); *Marks v. Zoning Bd. of Review of Providence*, 203 A.2d 761, 763 (R.I. 1964) (zoning board must be able to reconsider applications in light of changed circumstances). On the other hand, property owners must enjoy some level of certainty in the zoning and use of nearby land. *In re Crescent Beach Ass'n*, 126 Vt. 140, 141, 224 A.2d 915, 916 (1966) ("[The successive-application doctrine] is not to be technically and narrowly imposed, but yet enforced to the extent that property interests may be settled and stable, and property owners protected from harassment.").

¶ 10. This balance of flexibility and finality is incompatible with a strict application of claim preclusion, which "is intended to protect the courts and the parties from the burden of relitigation." *Russell v. Atkins*, 165 Vt. 176, 179, 679 A.2d 333, 335 (1996). Claim preclusion is a rigid doctrine that ends litigation without regard to equitable considerations. *Faulkner v. Caledonia County Fair Ass'n*, 2004 VT 123, ¶ 10, 178 Vt. 51, 869 A.2d 103. Applying the strict requirements of claim preclusion to zoning decisions would prohibit responses to changing circumstances in Vermont communities. But allowing changes in zoning applications without according respect to prior denials would encourage erratic, unpredictable land use. The successive-application doctrine is a compromise, applying general preclusive principles while allowing for adaptation to changing circumstances.

*Nehemiah Assocs.*, 168 Vt. 288, 294, 719 A.2d 34, 37-38 (1998); *In re Stowe Club Highlands*, 166 Vt. 33, 38, 687 A.2d 102, 105 (1996). However, an independent set of rules, not the successive-application doctrine, are applied to Act 250 permit amendment requests. *Id.* at 37-38, 687 A.2d at 105.

---

[2] The concerns of "flexibility and finality" have been treated extensively in the context of Act 250 permitting. *In re*

¶ 11. The Environmental Court's ruling requires that a successive applicant move under Rule 60(b) for relief from judgment before filing a successive application with the Review Board, at which point the applicant still must fulfill the requirements of the successive-application doctrine. We fail to see the purpose of requiring a threshold Rule 60(b) motion to reopen litigation, and then applying the successive-application doctrine to the new application. As we explained above, the successive-application doctrine is a form of claim preclusion specifically tailored to zoning cases. Requiring a Rule 60(b) motion applies traditional claim preclusion to zoning cases, undermining the purpose of the successive-application doctrine.

¶ 12. Neither does a consent judgment incorporating a stipulated agreement differ from a judgment entered after full litigation such that applying the strict standards of claim preclusion to one but not the other is justifiable. We have often indicated that a stipulated agreement incorporated into a court order has *the same* preclusive effect as a final judgment on the merits. See, e.g., *Pouech v. Pouech*, 2006 VT 40, ¶ 20, 180 Vt. 1, 904 A.2d 70 ("Once a stipulation is incorporated into a final order, concerns regarding finality require that the stipulation be susceptible to attack only on grounds sufficient to overturn a judgment."); *Johnston v. Wilkins*, 2003 VT 56, ¶ 8 ("[T]he stipulated settlement has the preclusive effect of a final judgment."); *In re Estate of Cartmell*, 120 Vt. 234, 240, 138 A.2d 592, 595 (1958) ("A judgment entered up by the court upon an agreement of the parties is, to say the least, as conclusive upon them as if judgment was rendered in the ordinary course of the proceeding."). Environmental Court consent judgments have *the same* effect as final judgments on the merits, and the successive-application doctrine is the appropriate method of seeking relief from a final zoning decision.

¶ 13. Quadros was free to file a successive application with the Review Board without first seeking Rule 60(b) relief. However, proper approval would require that Quadros show that the successive application "addresses all concerns that prevented approval" of the drive-through in his prior applications. *In re Armitage*, 2006 VT 113, ¶ 4.

*Reversed and remanded.*

¶ 14. **Burgess, J.,** concurring in part, dissenting in part. In keeping with the more flexible approach to res judicata in matters before the Environmental Court, I concur that the doctrine of successive application, rather than Rule 60, should govern disposition of renewed permit applications after a judgment in a contested case. We should go further, however, and clarify that a party to a *stipulated* judgment cannot undo that agreement without the consent of the other parties. The rationale of *In re Carrier*, allowing post-judgment reapplication to planning commissions when the application is "substantially changed so as to respond to objections raised in the original application," 155 Vt. 152, 158, 582 A.2d 110, 113 (1990), is inapposite to the judgment reached by stipulation in this case. Here, the parties expressly contracted for a permit that specifically excluded a drive-through window. Any record objections to the window as contemplated by *Carrier*, unless expressly reserved, were resolved by the stipulation to end the litigation.

¶ 15. "Rule 60(b) relief is ordinarily unavailable to relieve one from the effects of a stipulation freely made." *Goshy v. Morey*, 149 Vt. 93, 97, 539 A.2d 543, 546 (1987). There is no reason to suggest, by remand, that a different result could obtain under the doctrine of successive application. Chicanery might constitute a necessary exception, but is not claimed in this case.

¶ 16. The settlement here allowed the applicant to proceed with a project that

might have been stalled, modified, or defeated, but for the settlement. Successive application on the same settled subject matter, in this case the drive-through window, should be foreclosed to the stipulating applicant. Otherwise, no party in opposition to a permit application would risk compromise to settle litigation, for fear the other party has its fingers crossed behind its back.